Peleger, J.
Heard on demurrer to the petition.
The petition alleges that the plaintiff’s intestate, a boy of fourteen years, was a press feeder in the employ of the defendant’s printing establishment; that during said employment the lad became suddenly ill, was unable to continue his work and requested permission of the defendant’s superintendent to leave his work and go home; that defendant’s superintendent care.lessly -and negligently, under threats of discharge, failed to do so; that the boy continued at his work until he' became physically exhausted, left for his home, and by reason of such “neglect and want of proper advice and medical attendance ” he died on that same evening. Ten thousand dollars damages are claimed. The defendant filed a demurrer on the ground that the facts stated do not constitute a cause of action.
The Indiana courts seem to have held that while the service is not compulsory in the sense that an employe can not be compelled to work against his will, it can not close its eyes to the fact that the- servant does not stand upon the same footing, and that the necessities of the struggle for existence tends strongly to deprive him of the theoretical independence and freedom of action; that the servant’s primary duty is obedience, and that if, fearing discharge, he obeys an order of the- master, and through the negligence of the master, the servant, although knowing t'he danger, is thereby injured, it is but meet that he should be recompensed (Bailey on Personal Injuries Relating to Master and Servant, Sections 884 and 885).
The courts of other states, including Ohio, have not gone so far, and the extreme in that respect has been to hold the master responsible where the- employe reasonably relies upon the superior knowledge of the master o-r his promise to remedy patent defects, unless the danger is so manifest as to prevent a. reasonably prudent man from encountering the risk (75., Section 898).
*199 The generally accepted doctrine in all the other states is, that the servant assumes the usual and ordinary risks incident to the employment in which he is engaged. ‘! Fear of discharge by the employe if he does not obey the order of the master will not justify him in running a risk which is well known to him, and then if he is injured ask a recovery in damages from the master.” "In the absence of restrictive contract provisions the master is at liberty to discharge the servant at any time; so likewise is the servant at liberty to abandon his service at will. The master has the right to demand other service from that which the servant has engaged. The’ latter may accept or decline at will. Declining, he may lose his employment; accepting, he assumes the risks attending the service, if he knows or has been properly warned of them. The servant- is not under guardianship; he is a free man at liberty to make such contracts as he will. If through stress of cii’cumstances he consents to the order of the master rather than be discharged from employment, 'it does not impose liability' upon the master because of such demand, if he has otherwise performed the duty which the law imposes upon him with respect to the servant” (Ib., Sections 880 and 880a, Worlds v. Georgia Railroad Co., 99 Georgia, 283; So. Kansas Railway Co. v. Moore, 49 Kan., 616).
The rule of contributory negligence and the assumption of risks is, of course, not so stringent against persons not sui jv/ris, and our Supreme Court has held minors who possess only such discretion and judgment as is given to and may be reasonably expected from children of their age and capacity, to compel employers to use due care to protect them and instruct them concerning any dangers (Rolling Mill v. Corrigan, 46 O. S., 283; L. E. & W. Railway v. Mackey, 53 O. S., 383).
Nor could any civil liability attach under the laws- in this state against child labor. Sections 6986-1 and 2 provide for the punishment by penalty and imprisonment of any one who willfully causes or permits the life or limb of any child under sixteen years of age to be in danger, or its- health to be injured from and while actually engaged in such employment.
In the case at bar it is evident that the negligent act complained of did not arise from or out of anything done in the *200 course of the employment of the boy by the master or his agent in the way of dangerous machinery or appliances, or an unhealthy or unfit place to work in. It is alleged that he became suddenly ill from some cause unknown, and asked permission to go home for the purpose of obtaining medical advice. This was refused him under a threat of discharge, and because he took the risk of becoming worse rather than be discharged, the lad 'remained longer than he should, and by reason of his own failure to so seek medical advice and not for any cause growing out of the nature of his employment he subsequently died. As was said heretofore the servant was a free agent to abandon the service at his will. Tie certainly could not have been misled into the belief that he was forced to endanger his life or health by merely remaining on duty. The only possible situation in which such a liability could accrue would be in the case of apprenticeship where the master is placed in loco parentis, having the care and maintenance of the infant, and like a father is compelled to support the infant in sickness and in health, and to provide him with proper medicines and medical aid (2d Eng. & Am. Ency. of Law, Vol. II, page 512).
M. G. Eeintz, for the demurrer.
John W. Wolfe, contra.
If the superintendent of the defendant was guilty of the inhuman conduct alleged in the petition, this court may condemn it as heartless and brutal treatment, but it was not a breach of duty which he owed' the deceased' growing out of his employment, and it can not give the plaintiff the relief here demanded.
The demurrer is therefore sustained.